**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MELVIN JENKINS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Chicago Police Officers, KOROLIS #8820, ) <br> EVERETT, #1861; MICHAEL F. SHEAHAN, ) <br> as Sheriff of Cook County, ) <br> ) <br> Defendants. ) | Case No. 06 C 6904 <br><br> Judge Marvin E. Aspen |

**MEMORANDUM ORDER AND OPINION**

Presently before us is Defendants Chicago Police Officers Korolis and Everett's ("Defendant Officers") Motion for Summary Judgment. Plaintiff Melvin Jenkins alleges that Defendant Officers are liable for violating his constitutional rights under 42 U.S.C. §§ 1983, 1985(2) ("Count I") and for wrongful imprisonment ("Count II").[1] In their motion, Defendant Officers argue that they are entitled to summary judgment because they did not personally arrest or detain, nor cause the arrest or detainment of, Plaintiff Melvin Jenkins, their actions were reasonable, and they are entitled to qualified immunity. For the reasons set forth below, we deny Defendant Officers' Motion for Summary Judgment.

---

[1] Neither party appears to have addressed Count II, Plaintiff's apparent state law claim for wrongful imprisonment. Instead, Defendant Officers' motion focuses on Count I, Plaintiff's constitutional claims. Therefore, we limit this opinion to whether or not Defendant Officers are entitled to summary judgment with respect to Count I of Plaintiff's complaint.

1

**STATEMENT OF FACTS**

On January 1, 2005, Defendant Officers observed a driver (now identified as Walter Jenkins) failing to keep in his lane, and when they ran the license plate numbers they discovered that the car had been reported stolen. (Def. Facts ¶ 4). Defendant Officers turned on their emergency equipment and attempted to pull the vehicle over. (*Id.*). The driver did not pull over, but instead continued to drive and crashed into a pole, at which point Defendant Officers called for back up. (*Id.* ¶ 5). The driver then exited the vehicle and attempted to flee, but Defendant Officers and other assisting officers chased him. (*Id.* ¶ 6). The driver was apprehended, although it is contested who actually performed the arrest. (Pl. Resp. to Def. Facts ¶ 6).

The assisting officers drove away with Walter Jenkins in their vehicle. (Def. Facts ¶ 7). Defendant Officers drove separately to the 10th District in order to process the driver upon his arrival. (*Id.*). However, while en route, Defendant Officers learned that the driver was not being taken to the 10th District, but to the hospital to be treated for injuries he sustained from the crash. (*Id.* ¶ 8). Upon returning to the 10th District, Defendant Officers began their paperwork regarding the arrest. Both Officer Korolis and Officer Everest have testified that they cannot remember exactly how they obtained the arrestee's identification information that evening, but they also indicated that it was most likely relayed to them by their assisting officers at the hospital after the arrestee identified himself or through some form of documentation that listed arrestee's identifying information. (*Id.* ¶ 9; Pl. Resp. to Def. Facts ¶¶ 9, 10; Everest Dep. at 11, 14-17; Korolis Dep. at 47). Despite the fact that Walter Jenkins was actually the individual in custody, the Arrest Report included Melvin Jenkins's address, date of birth, Identification Record ("I.R.") number,[2]

---

[2] An I.R. number is based upon an individual's fingerprints. (Pl. Facts ¶ 32). Melvin Jenkins had been assigned an I.R. number of 311254 prior to January 1, 2005. (*Id.* ¶ 33). Walter

driver's license number, height, and weight.[3]

While Defendant Officers each filled in portions of the Arrest Report, both Defendant Officers claim that the I.R. number, height, and weight sections of the Arrest Report are not in their handwriting. (Korolis Dep. at 7-8, 20-21; Everest Dep. at 5, 14). In addition, Defendant Korolis testified that the I.R. number was not filled out when he turned it in to the desk sergeant for approval, and that it was possible that "other information regarding the guard detail, height and weight, ET Serpe" "could have been" entered after he signed off on the Arrest Report. (Korolis Dep. at 79, 96-97; Everest Dep. at 49).

After finishing their paperwork, Defendant Officers went to the hospital to interview the person they believed to be Melvin Jenkins. (Def. Facts ¶ 12). During this visit, Defendant Officers did not attempt to reverify the driver's identity, and the driver was arrested and charged under the name Melvin Jenkins. (*Id.* ¶ 13). In addition, it is unclear whether the driver was fingerprinted because while records indicate that an evidence technician took his fingerprints and photographs at the hospital, no fingerprint card has been located. (*Id.* ¶16, Ex. E; Pl. Resp to Facts ¶ 15). The driver was taken into custody upon his release from the hospital.

Shortly after January 1, 2005, Officer Everett testified before the Grand Jury. He was not asked to make an in-court identification and the individual that Defendant Officers had arrested on January 1, 2005 was not present in court. (*Id.* ¶ 17). As a result, an indictment was issued under the

---

Jenkins had been assigned an I.R. number of 467206 prior to January 1, 2005. Despite the fact that Walter Jenkins was the individual arrested on January 1, 2005, the Arrest Report listed an I.R. number of 311254. (*Id.*).

[3] Walter Jenkins is a black male, 5'8" tall, 210 pounds, with brown eyes and short hair and was 49 years old as of January 1, 2005. (Def. Facts ¶ 14). Melvin Jenkins is a black male, 6'2" tall, 215 pounds, with brown eyes and short hair, and was 52 years old as of January 1, 2005. (Def. Facts. ¶ 11).

name Melvin Jenkins. (*Id.* ¶ 17).

On January 11, 2005, Walter Jenkins was released from custody pursuant to the Cook County Sheriff's Administrate Mandatory Furlough ("AMF") program under the name Melvin Jenkins. (*Id.* ¶ 18).[4] On his release form, not only did he indicate that his name was "Melvin Jenkins," but he also listed 7128 S. Woodlawn, Chicago, Illinois as his address, which was Plaintiff's address at the time. (*Id.* ¶ 19).

Also during January 2005, Plaintiff received a letter at his residence, 7128 S. Woodlawn, Chicago, Illinois, indicating that he had been indicted for car theft and would need to appear in court. (*Id.* ¶ 21). Plaintiff was assigned a trial judge on February 3, 2005 and appeared in court on February 10, 2005 represented by a public defender. (Pl. Resp. to Def. Facts, Exhibits F & G; Def. Facts ¶ 24).

Sometime between February 10, 2005 and March 10, 2005, Walter Jenkins violated the terms of his AMF release. (Def. Facts ¶ 20). On March 10, 2005, Plaintiff appeared in the Circuit Court of Cook County Second District, and the State's Attorney stated that there was an arrest warrant for Melvin Jenkins for violating the terms of the AMF program. (*Id.* ¶ 26). Plaintiff's attorney informed the judge that her client was "not the person who was arrested on this offense." (Pl. Resp. Ex. H at 2; Pl. Resp. ¶ 26). The judge ordered that Plaintiff be taken into custody. (Pl. Resp. Ex. H). Defendant Officers were not present in court either of these dates. (Def. Facts ¶¶ 25, 27).

---

[4] Plaintiff has asked us to strike paragraphs 18-20, 23, 25, 27, 28, and 31 of Defendants' Statement of Facts because he denies that these statements "are material facts which support Defendants' motion for summary judgment." (Pl. Resp. to Def. Facts ¶¶ 18-20). However, under Local Rule 56.1 such "a general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). In addition, the only two acceptable responses to a statement of fact are "admit" or "deny." Therefore, we may deem any other response an admission. *See Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir. 1997).

Plaintiff's case was then continued each month until December 2005. (*Id.* ¶ 29). On December 1, 2005, the State agreed to have the Defendant Officers subpoenaed to come to court to identify the individual they had arrested on January 1, 2005. (Pl. Resp. ¶ 29). Plaintiff was released on an I-Bond on January 10, 2006 after 306 days in custody. (*Id.* at Ex. J). On January 26, 2006, the charges against Plaintiff were dismissed. (Def. Facts Ex. G).

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted).

Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

## ANALYSIS

Defendant Officers argue that they are entitled to summary judgment because they did not

5

"cause" the violation of Plaintiff's constitutional rights as required for personal liability under Section 1983 and because they are entitled to qualified immunity. We address each of these argument in turn below.

### A. Personal Liability under § 1983

The parties dispute whether or not the Defendant Officers can be held liable under Section 1983 because they were not personally involved in the arrest or detention of the Plaintiff Melvin Jenkins, but instead were involved in the arrest of Walter Jenkins. Section 1983 provides a cause of action against any state actor who "subjects, or *causes* to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (2007) (emphasis added). The Seventh Circuit has held that "[a]n official causes a constitutional violation if he sets in motion a series of events that defendant knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights." *Brokaw v. Mercer County*, 235 F.3d 1000, 1012 (7th Cir. 2000). This violation can be established by showing that an official "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent." *Id.*

Thus, even if Defendant Officers did not personally arrest Plaintiff, they may still be liable if their arrest of Walter Jenkins "set[] in motion a series of events that [they] knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights." *Id.* Plaintiff argues that Defendant Officers' failure to properly identify Walter Jenkins on January 1, 2005 "caused" the detention of Melvin Jenkins some months later, because had Defendant Officers' taken reasonable steps to properly identify Walter Jenkins, Melvin Jenkins's identifying information

would never have been listed on the Arrest Report, which was the beginning of a series of events that ultimately led to Melvin Jenkins's detention.

Defendant Officers argue that this causal relationship is attenuated at best because they did not know and reasonably could not have known that

> "there was a chance the [identifying] information they received from fellow officers was inaccurate; that the individual they arrested might be released on mandatory furlough, again under the name Melvin Jenkins; that he might sign his release paperwork with the name Melvin Jenkins; and might fill in the address belonging to Plaintiff; might one day violate the terms of that program; which might cause a letter to be sent to Plaintiff; and might thereby cause Plaintiff to come to court and be held in custody; and then should have known that no one would catch the error for 306 days."

(Def. Reply at 5).

While we acknowledge that this causal relationship involves multiple steps, causation is a question of fact, and on summary judgment we must draw all reasonable inferences in favor of the nonmoving party. *See Wisconsin Mutual Ins. Co. v. United States*, 441 F.3d 502, 505 (7th Cir. 2006). Thus, drawing all inferences in favor of Plaintiff, it is not wholly unreasonable to assume that Defendant Officers could have known that if the identifying information they entered into an Arrest Report was false or unsubstantiated, that the individual whose identifying information was actually used might suffer repercussions from that misidentification. An inference in Plaintiff's favor is particularly warranted given that neither Defendant Officers can recall the source of the identifying information they entered into the Arrest Report and both Defendant Officers testified that arrestees often give aliases. (Def. Facts ¶ 15). Therefore, Defendants Officers are not entitled to summary judgment based upon their contentions that they could not have "caused" Melvin Jenkins' constitutional deprivations.

### B. Qualified Immunity

The Defendant Officers next argue that even if they may be held personally liable under Section 1983, they are entitled to qualified immunity. Qualified immunity is a two-step inquiry. We must first ask "whether the facts alleged make out a constitutional violation." *Id.* at 1081. If so, we then determine whether the violated constitutional right "was firmly established at the time of the alleged injury, such that a reasonable officer would understand that his actions are in violation of that right." *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007). However, "[q]ualified immunity does not protect plain incompetence." *Bibart v. Stachowiak*, 888 F. Supp. 864, 868 (N.D. Ill. 1995) (quoting *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995)). Additionally, "[a]lthough the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it." *Mannoia*, 476 F.3d at 457.

Plaintiff responds that Defendant Officers are not entitled to summary judgment based upon qualified immunity because questions of fact remain regarding whether their actions amounted to plain incompetence. Plaintiff relies upon *Bibart v. Stachowiak* for the proposition that "[q]ualified immunity does not protect plain incompetence." 888 F. Supp. at 868.

In *Bibart*, a dispatcher misread a computer screen and told officers that there was an outstanding warrant for Dianna Bibart, when in fact the computer indicated that the outstanding warrant was for Darlene Bibart. We held that the officers were entitled to qualified immunity because it was reasonable for them to rely upon the dispatcher's statements. However, we also held that because material questions of fact remained as to whether the dispatcher's actions amounted to "plain incompetence," we could not decide the dispatcher's qualified immunity claim on summary judgment. *Bibart*, 888 F. Supp. at 868.

In this case, Plaintiff argues that material questions of fact remain as to whether or not

8

Defendant Officers' actions amounted to plain incompetence. For example, Plaintiff contends that it is disputed: (1) where Defendant Officers obtained the information they entered into the Arrest Report; (2) that even if they had relied upon other officers for this information the height and weight differences between Melvin Jenkins and Walter Jenkins were obvious such that they should have corrected their report;[5] and (3) because both Defendant Officers acknowledged their duty to properly identify a suspect their failure to do so may have amounted to plain incompetence. (Pl. Resp. at 11).

On the other hand, Defendant Officers argue in their Motion for Summary Judgment that they reasonably relied upon their assisting officers' statements when filling out their paperwork, and that therefore they should be entitled to qualified immunity. Indeed, in *Bibart*, we held that officers who reasonably relied upon other officer's statements were entitled to qualified immunity. *Bibart*, 888 F. Supp. at 867.

We conclude that this case is distinguishable from *Bibart* because the facts surrounding the identification procedure remain unclear at this stage in the litigation. *See Hill v. Shelander*, 992 F.2d 714 (7th Cir. 1993) (finding that disputed issue of fact with respect to qualified immunity precluded summary judgment). Unlike *Bibart* where it was undisputed that the officers relied upon the dispatcher's statements, Defendant Officers testified that they could not remember the exact source of the information that they entered into the Arrest Report. (Korolis Dep. at 11, 13, 16, 21 ("Honestly, I don't remember where it came from."); Everest Dep. at 16 (testifying that his belief that he received the identification information from his assisting officers was only an "educated guess")). Plaintiff argues that because we must draw all reasonable inferences in his favor, and the

---

[5] However, we note that both Defendant Officers claim that the height and weight sections of the Arrest Report were not in their handwriting. Plaintiff has failed to produce any facts to dispute these contentions.

9

exact circumstances of how Melvin Jenkins' information ended up on Walter Jenkins's Arrest Report is unknown, a reasonable jury might infer that the mistakes may have been due to Defendant Officers' plain incompetence. (Pl. Resp. at 10). We agree and hold that because there remains a disputed issue of material fact, we are unable to decide the qualified immunity issue on summary judgment at this time.

## CONCLUSION

For the reasons described above, we deny Defendant Officers' Motion for Summary Judgment. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Date: January 28, 2008